417 A.2d 677

**COMMONWEALTH of Pennsylvania**

**v.**

**Alice ROBINSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 27, 1979.

Filed Dec. 21, 1979.

338

Benjamin Paul, Philadelphia, for appellant.

Carolyn Temin, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Appellant contends, *inter alia*,[1] that the lower court erred in admitting into evidence at her homicide trial: (1) hearsay statements made by appellant's daughter; and (2) an enlarged black and white photograph of the deceased. We agree and, accordingly, reverse and remand for a new trial.

Three-year-old Robert Darnell Robinson died on December 21, 1976, of malnutrition and dehydration. On December 27, 1976, appellant, Robert's mother, was arrested and charged

---

\* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania, and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

1. Appellant also contends that the evidence was insufficient to support the verdict; that the trial court improperly admitted certain opinion evidence offered by the Commonwealth's medical expert; and that the prosecutor made improper statements in her closing argument to the jury. Additionally, appellant challenges the admission into evidence of a color slide of the infant decedent. We need not reach these issues, however, in view of our disposition of the case.

with murder, voluntary manslaughter, and involuntary manslaughter. At trial, over appellant's objection, the Commonwealth offered into evidence the testimony of Rebecca Robinson, the deceased child's paternal grandmother, regarding the contents of a phone call she made to the appellant's home in October 1976. Rebecca Robinson stated that her five-year-old granddaughter, Catrena, answered the phone, crying. Upon being asked what was wrong, Catrena said that she was crying because her "mommy had gone out." Rebecca Robinson testified that in response to her efforts to calm the child by telling her that her mother would soon return, Catrena replied: "No, my mommy won't be back. She always leave [sic] me and my brother." The trial court admitted this testimony into evidence on the theory of res gestae. The trial judge also admitted into evidence a 2' by 4' black and white photograph of the body of Robert Robinson in the emaciated condition in which the body was found by the police. Although the photograph did not go out with the jury, the judge permitted it to be passed among the jurors, limiting each juror to a view of no more than two seconds.

Appellant was convicted of third degree murder. The trial court denied appellant's post-verdict motions [2] and sentenced her to five to eighteen years imprisonment. This appeal followed.

Appellant first contends that the trial court erred in admitting into evidence as part of the res gestae the hearsay statements made by her daughter, Catrena. "As we have recognized, 'res gestae' is actually a generic term encompassing four discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utteranc-

---

**2.** Although appellant's post-trial motions were merely form motions, appellant filed a brief in support of the motions and the lower court considered the issues raised in the brief. We will, therefore, consider the issues raised therein to be preserved for our review. *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (J. 179) (1979).

es; and (4) declarations of present sense impressions." *Commonwealth v. Pronkoskie*, 477 Pa. 132, 136–37, 383 A.2d 858, 860 (1978). The rationale underlying each of these exceptions "is the recognition of spontaneity as the source of special trustworthiness. This quality of spontaneity characterizes to some degree nearly all the types of declarations which have been labelled *res gestae.*" *McCormick, Handbook of the Law of Evidence* 687 (2d ed. 1972). Thus, in order for a statement to come within the excited utterance exception to the hearsay rule, it must be shown first that the declarant "witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event." *Pronkoskie, supra,* 477 Pa. at 138, 383 A.2d at 860. Similarly, the present sense impression exception applies only to "declarations concerning conditions or non-exciting events which the declarant is observing *at the time of his declaration.*" *Commonwealth v. Coleman,* 458 Pa. 112, 117, 326 A.2d 387, 389 (1974) (emphasis added). In the case at bar, the lower court held that Rebecca Robinson's hearsay testimony was admissible because Catrena's statement was either a declaration of present mental state, an excited utterance, or a declaration of a present sense impression. While we agree that these statements approach each of the three exceptions, the statements do not actually fit squarely within any one of them. Catrena's statements do not describe her present mental state or an event which she was witnessing as she spoke; rather, they describe past actions of her mother. Moreover, we cannot determine the time elapsed between the exciting or upsetting event of her mother leaving and Caterna's statements. Therefore, the spontaneity which must be demonstrated for each exception in question is absent. Because we lack this essential information, we must conclude that the statements made by Catrena do not fall within any of the res gestae exceptions to the hearsay rule. Moreover, we are not convinced beyond a reasonable doubt that this im-

properly admitted evidence could not have contributed to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Therefore, the error was not harmless.

Appellant also contends that the trial court erred in admitting into evidence the 2' × 4' photograph of the deceased. Where the trial judge in a homicide case is confronted with the question of the admissibility of gruesome or inflammatory photographs,[3] the test he must apply is "whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Powell*, 428 Pa. 275, 278–79, 241 A.2d 119, 121 (1968). *See also Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974). The rationale for this test "is that a fair trial demands the exclusion of this possible source of prejudice, even though the testimony is otherwise relevant and competent, unless that evidence is essential to the proof of the prosecution's case." *Commonwealth v. Schroth*, 479 Pa. 485, 489, 388 A.2d 1034, 1037 (1978) (citation omitted). " '[I]n the trial of criminal cases photographs of the victim and of the scenes of the crime are admissible to aid the jury in their understanding of the alleged crime, the kind of crime it was, exactly what caused the victim's death and what, if any connection defendant had with it; however, they are not admissible for the purpose of exciting or inflaming the emotions of the members of the jury.' " *Commonwealth v. Robinson*, 433 Pa. 88, 91, 249 A.2d 536, 538 (1969) (*quoting Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959)). Finally, "[a]s we have said multiple times, the admission of such photos is largely within the discretion

**3.** "While there has been some difference of opinion among the members of [our Supreme] Court, the majority has declined to accept the view that a photograph of the deceased in a homicide prosecution is per se potentially inflammatory." *Commonwealth v. Schroth*, 479 Pa. 485, 489, 388 A.2d 1034, 1037 (1978). Because of the trial judge's express finding that the photograph was "gruesome" we limit our inquiry to the second tier of the Supreme Court's two-tier approach to admissibility of photographs.

of the trial court, and its ruling will not be overruled on appeal unless there is an abuse of that discretion." *Commonwealth v. Woodward*, 483 Pa. 1, 6, 394 A.2d 508, 511 (1978) (citation omitted).

█ In the case at bar, the trial court noted that the photograph was "gruesome only as the picture of a corpse where death has ensued from starvation is gruesome." Given this statement of the potentially inflammatory nature of the photograph, we will proceed to examine the evidentiary value of the photo and the severity of its prejudicial impact. The Commonwealth contends that the photograph was essential to prove that appellant had ignored the obvious wasting of the child and therefore had shown sufficient malice to be guilty of murder rather than manslaughter. Appellant, on the other hand, points out that this photograph was extremely prejudicial, particularly in view of the uncontested fact that the photo was enlarged to a size of 2′ by 4′. We agree with appellant that this excessive enlargement of the already shocking photograph of a three-year-old child dead from starvation simply increased the inflammatory effect upon the jury. The instant case is not one in which the photograph was necessary to the understanding of a complex theory espoused by the Commonwealth. Even if a photograph were necessary to a full appreciation of the decedent's condition, we find that the 2′ by 4′ enlargement introduced herein was so excessive as to substantially inflame the jury and outweigh its evidentiary value. Because we believe the effect of the use of this photograph could not have been but to shock and outrage the jury, we find that the trial judge abused his discretion in admitting it into evidence even for the limited view of the jury.

Because of these trial errors, we must reverse and order a new trial for appellant.

Judgment of sentence reversed and case remanded for a new trial.