J-A26025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                           :         PENNSYLVANIA
                                             :

              v.                              :
                                           :

CURTIS NEWKIRK                 :
                                         :

           Appellant                 :      No. 833 WDA 2018

Appeal from the Judgment of Sentence April 16, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014209-2017

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

DISSENTING MEMORANDUM BY LAZARUS, J.:     **FILED MARCH 20, 2020**

I respectfully dissent. In my opinion, the Victim's statement does not qualify as an excited utterance. However, even if her statement does qualify as an excited utterance, the trial court committed reversible error by admitting that statement where no independent proof corroborated that Appellant was the initial aggressor. I would reverse and remand for a new trial.

On direct examination, the Commonwealth questioned the Victim about the statement she made to Officer Stumpf regarding her altercation with Appellant. The Victim testified that she did not recall telling Officer Stumpf that Appellant struck her first. N.T. Trial, 4/16/18, at 9-10. The Victim further testified:

> I would like to say that I also told [the District Attorney] that [Appellant] did not start this, I did, I attacked him[.] . . . I pepper sprayed him first but I didn't remember at the time. I woke up to

him hitting me.  I assumed [when speaking to Officer Stumpf that Appellant] started first and he did not.

*Id.* at 6-7.

The trial court, over Appellant's objection, permitted the Commonwealth to introduce, through the testimony of Officer Stumpf, the Victim's statement from November 1, 2017, and offered the following analysis:

[The Victim] had a personal relationship with [Appellant] and was unable to recall at trial whether she discharged the pepper spray in an offensive or defensive situation.  [Appellant] testified that [the Victim] had been the aggressor.  When interviewed shortly after the incident, [the Victim] stated to [Officer Stumpf] that she utilized the pepper spray to counteract the aggression of [Appellant].  Given [the Victim's] inability to recall what she had done, Officer Stumpf was permitted to testify, over objection, with regard to her statements to him close in time to the incident as qualifying as an excited utterance exception to hearsay.

Trial Court Opinion, 1/22/19, at 3.

Apparently, the trial court premised the admissibility of the Victim's statement on "her inability to recall what she had done," and not on the grounds that her statement qualifies as an exception to the rule against hearsay.[1]  *See id.*

The majority correctly points out that in order to admit a purported excited utterance, "it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close [in time] as to render her reflective thought processes inoperable, and, second, that her declarations were a

---

[1] To the contrary, the Victim testified at trial that she forgot what she had said on November 1, 2017, not what she had done.  She testified at trial that she remembers pepper spraying Appellant first.  *See* N.T. Trial, 4/16/18, at 7-11.

- 2 -

spontaneous reaction to that startling event." Majority Opinion, at *6-7 (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 495-96 (Pa. 2006)). "The crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective process remains in abeyance." Pa.R.E. 803(2), cmt. (quoting *Commonwealth v. Gore*, 396 A.2d 1302, 1306 (Pa. Super. 1978)).

The record does not establish that the Victim's statement to Officer Stumpf was an excited utterance. The Commonwealth presented no evidence of (1) how much time elapsed between the incident and the declaration, (2) the Victim's demeanor when speaking with Officer Stumpf, (3) whether the Victim remained under the stress of the altercation at the time of her declaration, (4) whether the Victim refrained from speaking to anyone prior to Officer Stumpf, and (5) whether the Victim's nervous excitement continued to dominate such that her reflective thought processes remained inoperable. *See* N.T. Trial, 4/16/18, at 3-17. Officer Stumpf did not record the statement contemporaneously, and the Victim did not sign any statement. Moreover, the Victim's alleged statement was self-serving, in narrative form, and in response to an officer's questioning. Therefore, the Commonwealth did not present sufficient indicia of reliability to permit the introduction of her out-of-court statement as an excited utterance. *See Gore*, *supra*.

For a statement to qualify as an excited utterance, "evidence must show that the declaration was spoken under conditions which ensured that it is not the result of premeditation, consideration or design, and it cannot be in the

form of a narration or attempted explanation of past events." **Commonwealth v. Little**, 364 A.2d 915, 917 (Pa. 1976). We have explained that:

> where the time interval between the event and the statement is long enough to permit reflective thought, [t]he statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice. . . . Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion.

**Lininger v. Kromer**, 358 A.2d 89, 93 (Pa. Super. 1976); **See also Commonwealth v. Levanduski**, 907 A.2d 3, 16 (Pa. Super. 2006) (statement given in narrative form that refers to past events not admissible as excited utterance).

I disagree with the majority's assertion that the Victim's statement "was not made in narrative form and it was not the result of reflective thought." Majority Opinion, at *8. In my opinion, the Victim's statement to Officer Stumpf, in which she described "an argument over beer" before detailing the altercation with Appellant, is a narrative statement explaining past events, and is therefore not admissible as an excited utterance, especially given the lack of testimony to establish that the statement meets the definition of an excited utterance. **See Levanduski**, **supra** at 16; **Little**, **supra** at 917; **see**

*also Croyle v. Smith*, 918 A.2d 142, 150 (Pa. Super. 2007) (responding officer prohibited from introducing alleged excited utterance, made ten minutes after automobile accident, because declarant's "full account of what occurred prior" disproved he was under stress of excitement caused by crash). The narrative quality of the Victim's statement indicates the absence of spontaneity and suggests the use of her reflective faculties. *Levanduski*, *supra* at 16.

Additionally, further evidence suggests that the Victim's statement was the result of reflective thought. While we have held that a declaration is not *per se* inadmissible as an excited utterance because it was in response to a question, *Commonwealth v. Cooley*, 348 A.2d 103, 106-07 (Pa. 1975), we have recognized that where a statement was made in response to an inquiry, it suggests "that the statement was the result of reflective thought" and weighs against admission. *Lininger*, *supra* at 94. Here, the fact that the Victim's recitation of events was in response to Officer Stumpf's questioning weighs against admission. *See id.* We have further explained that the self-serving nature of a statement also indicates the use of reflective thought and weighs against admissibility. *Id.* It does not strain logic to conclude that, even in her drunken state, the Victim must have known that if she told Officer Stumpf that she had attacked Appellant first, she would likely have been arrested instead of him; her alleged claim that Appellant was the initial aggressor is, thus, self-serving.

In light of the foregoing, I believe the Commonwealth failed to prove that the Victim's statement qualifies as an excited utterance and that several factors weigh against the conclusion that it does; the court, therefore, should not have admitted her statement through Officer Stumpf's testimony. However, even if her statement does qualify as an excited utterance, the trial court committed reversible error by admitting that statement where no independent proof corroborated that Appellant was the initial aggressor.

The crux of this case is whether Appellant was the initial aggressor or acted in self-defense. Significantly, there is nothing in the record, other than Officer Stumpf's recitation of the Victim's statement, establishing that Appellant was the initial aggressor. The only additional evidence was Officer Stumpf's observations of bruises and swelling on the Victim and pepper spray on Appellant. N.T. Trial, 4/16/18, at 4-17. Those first-hand observations do not establish the sequence of events the Victim allegedly described out of court (i.e., that Appellant was the initial aggressor). Those observations support Appellant's claim of self-defense as much as they support proof of his guilt.

This Court has held that "[w]here there is no independent evidence that a startling event has occurred [as described], an alleged excited utterance cannot be admitted as an exception to the hearsay rule." **Commonwealth v. Barnes**, 456 A.2d 1037, 1040 (Pa. Super. 1983); **see also Commonwealth v. Keys**, 814 A.2d 1256 (Pa. Super. 2003) (absent

independent proof of startling event, a purported excited utterance is not sufficient to establish that event actually occurred as described).[2] In **Barnes**, the defendant was found guilty of robbery, theft by unlawful taking, and simple assault. **Id.** at 1038. The victim told the responding officer that defendant had entered his apartment, struck him, and stole $300. **Id.** at 1039. Prior to trial, the victim died of unrelated causes, and at trial, the Commonwealth introduced the victim's statement as an excited utterance through the testimony of the officer. **Id.** The Commonwealth offered no additional evidence that the defendant had committed the crime. **Id.** This Court stated:

> [T]he only evidence that a startling event had in fact occurred was contained in the statement sought to be admitted as a spontaneous reaction thereto[.] . . . We are thus presented with the troublesome situation in which the excited utterance itself is being used to prove that an exciting event did, in fact, occur. This circuitous reasoning is unacceptable.

**Id.** at 1039-40. The lack of independent evidence of the assault and robbery precluded the Commonwealth from proving the "excitement and stress which were necessary to make [the victim's] extra-judicial statement admissible as a spontaneous reaction thereto." **Id.** at 1041. This Court held that in this

---

[2] Legal scholars have noted with approval the requirement that excited utterances be supported by independent proof. **See** McCormick on Evidence, § 297 (2nd ed. 1972); Binder, The Hearsay Handbook, Exception 2 pg. 43; 29 Am.Jur.2d, Evidence § 711 ("the principal act must first be established before *res gestae* statements can be admitted"); 31A C.J.S. Evidence § 404 ("[i]t is proceeding in a circle to use the declarations as proof of facts necessary to constitute the declarations part of the *res gestae*").

- 7 -

situation, introduction of the victim's out-of-court statement through the officer's testimony warranted reversing the judgment of sentence and remanding the case for a new trial. *Id.* at 1041.

This Court held similarly in **Keys**, **supra**. There, the victim's husband held her overnight in their home against her will, threatening to cut her throat with a sword. *Id.* at 1257. She managed to escape the following day and contacted police thirty minutes later. *Id.* Although the victim's "voice and behavior were distraught and erratic," this Court held that her statement to a police officer narrating the overnight events, made in response to the officer's inquiry, was not an excited utterance. *Id.* at 1259-60. Significantly, the Commonwealth offered no additional, independent evidence substantiating the incident as described. *Id.* at 1259. Citing **Barnes**, **supra**, this Court held that, absent independent proof of the event, a purported excited utterance is not sufficient to establish that the event actually occurred as described. **Keys**, **supra** at 1259 ("We do not find that the officer's observations of her agitated state independently establishes the startling event."). The Court also found it significant that "[n]o testimony was presented that she did not 'engage in a reflective thought process' prior to her contact with the police officer." *Id.*

The matter *sub judice* is analogous to **Barnes** and **Keys**. Here, as in those cases, the Commonwealth presented no independent evidence corroborating the startling event that led to the alleged excited utterance—i.e., that the defendant/appellant was the initial aggressor. Additionally, here,

as in **Barnes** and **Keys**, there was no evidence that the declarant refrained from engaging in reflective thought prior to the declaration. Thus, as in those cases, I find the trial court here committed reversible error in admitting the Victim's uncorroborated hearsay statement. **See Barnes**, **supra**; **Keys**, **supra**.

Additionally, I disagree with the majority's harmless error analysis. I do not believe that this error was harmless beyond a reasonable doubt. The Victim's uncorroborated hearsay statement constituted the entirety of the Commonwealth's evidence of Appellant's guilt. In fact, the trial judge told Appellant at the conclusion of the trial, "I didn't believe a word you said is what it comes down to. I didn't believe a word [the Victim] said either. I only believed the police." N.T. Trial, 4/16/18, at 2. Thus, the error was not harmless in that the improperly admitted testimony was the sole basis for the court's verdict. **See Commonwealth v. Wright**, 961 A.2d 119, 143 (Pa. 2008) ("an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction.").

Lastly, I respectfully disagree with the majority's conclusion that the trial court's error in admitting the Victim's statement was harmless in that "the evidence is sufficient to support the trial court's factual finding that, even if the Victim pepper sprayed Appellant first, Appellant was guilty of simple assault because he used excessive force in repelling the attack." Majority

- 9 -

Opinion, at *11. I do not believe the evidence was sufficient to support that factual finding.

With regard to the defense of self-defense, "[t]he use of force on or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). As the majority points out, "a person employing protective force may estimate the necessity thereof as he believes them to be when the force is used." Majority Opinion at *9, quoting 18 Pa.C.S.A. § 505(b)(3).

We have previously explained that pepper spray, also known as mace, "is an instrument which is likely to cause serious bodily injury . . . [i]f one sprays mace directly into the eyes of another person[,] there is a high probability that the victim will be seriously hurt . . . [i]t may blur vision to cause temporary blindness, burn the eyes, [and] cause redness and swelling." *Commonwealth v. Chambers*, 157 A.3d 508, 516-17 (Pa. Super. 2017), *reversed on other grounds*, 188 A.3d 400 (Pa. 2018). We have also held that, depending on the manner in which it is used, pepper spray may qualify as a deadly weapon under 18 Pa.C.S.A. § 2301.[3] *Id.*

---

[3] *See* 18 Pa.C.S.A. § 2301 (deadly weapon is "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury").

Here, Appellant testified that after the Victim pepper sprayed him "right in [the] eyes," he had "no idea" what was going on and began "fighting for his life." N.T. Trial, 4/16/18, at 22. He further explained that he was simply "struggl[ing], "just swinging to get [the Victim] to stop," and that "[a]s soon as she had stopped[,] [he] was able to get away." *Id.* at 26. Given the foregoing, I believe Appellant did not, as a matter of law, use excessive force in repelling the Victim's attack. This contradicts the conclusion that he would have been found guilty of simple assault "even if the Victim pepper sprayed Appellant prior." Majority Opinion, at *10. Accordingly, introduction of the Victim's hearsay statement was not harmless error.

I would reverse the conviction and remand for a new trial.